UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUANITA HEDRICK,

        Plaintiff,

        v.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

        Defendant.

Civil No. 06-6163-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

        Plaintiff Juanita Hedrick brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the Act). Plaintiff requests judicial review of a final decision by the Commissioner of the Social Security Administration (SSA) denying her application for disability insurance

---

[1] On February 12, 2007, Michael J. Astrue became Commissioner of Social Security and he is substituted in these proceedings as such. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25 (d)(1).

1 - OPINION AND ORDER

benefits (DIB) and Supplemental Security Income (SSI) payments. She seeks an order reversing the Commissioner's decision and remanding her case for an award of benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). After reviewing the record of this case and evaluating counsel's arguments fully, this court concludes that the Commissioner's decision must be affirmed.

## ADMINISTRATIVE HISTORY

Plaintiff protectively filed her current applications for DIB and SSI benefits on September 18, 2003, and alleged disability beginning April 1, 2001. Tr. 287.[2] Her applications were denied initially and after reconsideration. Tr. 47-51, 53-55.

Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on December 14, 2005. Plaintiff and vocational expert (VE) Vernon Arne testified at the hearing. *See* Transcript of Hearing, Tr. 301-37.

On February 23, 2006, the ALJ issued a decision concluding that plaintiff was not entitled to disability benefits. Tr. 16-26. The SSA Appeals Council denied plaintiff's subsequent request for review. Tr. 10-12; *see also* 20 C.F.R. § 404.981, 416.1481, 422.210. Plaintiff then filed her Complaint initiating this action.

## FACTUAL BACKGROUND

Plaintiff was born in 1958. She was forty-three years old on April 1, 2001, her alleged disability onset date. Tr. 287.

---

2   Citations beginning with "Tr." refer to pages in the official transcript of the administrative record filed with the Commissioner's Answer.

2   - OPINION AND ORDER

Plaintiff has earned a high school graduation equivalency diploma, attended college (psychology and human services classes at Lane Community College), and has worked as a housekeeper, bookkeeper, cosmetologist, cashier, property manager, customer service manager, assembly worker, overnight stocker, and food booth operator. Tr. 84, 146, 155, 176, 308, 329.

Plaintiff is sixty-two inches tall and weighs between 260 and 300 pounds. Tr. 214, 258, 319. She suffered a right ankle fracture in 1990. This required an open reduction, internal fixation surgery, and plaintiff also underwent a second surgery due to an infection. Tr. 213, 306. Plaintiff described herself as limited to standing for no more than two hours with an option to sit or stand. Tr. 124-26. She could walk for five or fifteen minutes and needed to elevate her right leg after it swelled. Tr. 313.

Her daily activities have included attending college, driving, shopping, laundering, sewing, crafts, and operating a food booth. Tr. 171, 177, 309, 329. She lives with her husband, teenaged son, and her husband's two nephews. Tr. 127. This court will address details of plaintiff's medical history as necessary in this ruling.

## STANDARDS

To establish an eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability. 20 C.F.R. §§ 404.1520, 416.920; *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to step two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA. *See* 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, in step five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996) (citations omitted).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. *See* 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999) (citations omitted); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations omitted). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). This court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citations omitted). A decision to deny benefits may be set aside only if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Benton*, 331 F.3d at 1035.

## SUMMARY OF THE ALJ'S FINDINGS

At step one of the Commissioner's five-step analysis, the ALJ found that plaintiff had not engaged in SGA after her alleged onset date (despite evidence of some earnings). Tr. 21, Finding 2.

At step two, the ALJ identified plaintiff's severe impairments: "history of right ankle fracture, status post open reduction and internal fixation, history of cellulitis and post-surgical lymphedema, and obesity." Tr. 21, Finding 3.

At step three, the ALJ concluded that plaintiff's impairments, either singularly or in combination, did not meet or equal the requirements of a listed impairment in 20 C.F.R., Part 404, pt 404, subpt. P, app. 1. Tr. 22, Finding 4. The ALJ determined that plaintiff retained the RFC to lift twenty pounds occasionally and to lift ten pounds frequently, and could walk and stand for two hours during an eight-hour work day, and could sit for a full eight-hour work day if given an opportunity to change positions occasionally. Tr. 22, Finding 5. Plaintiff could also

stand for thirty minutes or walk for fifteen minutes at a time, kneel, crouch, crawl, or climb ramps and stairs occasionally, but could never climb ladders, ropes, or scaffolds. *Id.*

At step four, the ALJ concluded that plaintiffs could not perform her past relevant work. Tr. 24, Finding 6. At step five, after eliciting VE testimony, the ALJ determined that plaintiff could perform other work that exists in significant numbers in the national economy, including small products assembler (unskilled, light work), document preparer (sedentary exertion), marker (light exertion) and surveillance system monitor (unskilled, sedentary work). Tr. 24-25, Finding 10.

## QUESTION PRESENTED

Plaintiff contends that this court should reverse and remand the Commissioner's final decision for an award of benefits. Primarily, plaintiff alleges that (1) the ALJ failed to adequately address the effect of plaintiff's obesity in the sequential analysis; (2) the ALJ failed to give clear and convincing reasons for rejecting plaintiff's testimony; and (3) the Commissioner failed to meet the burden at step five of proving that plaintiff retained an ability to perform "other work" in the national economy. This court has examined each of plaintiff's arguments, and concludes that the Commissioner's decision is supported by substantial evidence and must be affirmed.

## DISCUSSION

### 1. The ALJ adequately addressed the effect of plaintiff's obesity

Plaintiff's first argues that "[t]here is no indication in the ALJ's decision that he considered the impact of plaintiff's obesity upon her ankle condition, a condition that he acknowledged caused her to walk slowly and with a limp." Pl.'s Brief at 12. Plaintiff argues that

in failing to do so, the ALJ erred in concluding that plaintiff's ankle condition failed to meet or equal the criteria of listings 1.02 or 1.03. *Id*. at 10.

The requirements of listings 1.02 or 1.03 include a determination that a person is unable to "ambulate effectively." Listing 1.02 pertains to a "major dysfunction" of a joint and is characterized in part by "gross anatomical deformity," "chronic joint pain and stiffness" and "[i]nvolvement of one major peripheral weight-bearing joint" resulting in an inability to "ambulate effectively, as defined in 1.00B2b . . . ." *See* 20 C.F.R., pt 404, subpt. P, app. 1.

Listing 1.03 pertains to reconstructive surgery or "surgical arthrodesis of a major weight-bearing joint," with an "inability to ambulate effectively," in cases in which returning to "effective ambulation did not occur, or is not expected to occur, within 12 months of onset." *Id.*

An "inability to ambulate effectively" is defined as "an extreme limitation of the ability to walk," an impairment "that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id*., Listing 1.00B2b1. Specifically:

> [t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Listing 1.00B2b2.

8   - OPINION AND ORDER

The ALJ concluded that plaintiff's history of her right ankle fracture and her cellulitis and post-surgical lymphedema were severe impairments. Tr. 22. Additionally, the ALJ acknowledged that the record established that plaintiff was obese, and that her ability to "heel-toe walk" was "somewhat decreased," secondary to obesity, and her that obesity was a severe impairment. *Id*., referencing Tr. 214-16 (the opinion of David Morrell, M.D.). Specifically, the ALJ noted that plaintiff's obesity "somewhat limits" her exertional abilities. *Id*. (citation omitted).

Following his examination of plaintiff, Dr. Morell diagnosed:

> Right ankle pain: Status post open reduction and internal fixation and removal of hardware secondary to infection. Residual deficits include zero range of motion dorsiflexion and plantar flexion. In addition she has zero de [sic] range of motion with eversion and inversion of the right ankle. She has pain in the medial and anterior aspect of the right ankle. Walking or standing causes her pain. Sitting does not cause any problems for her. The claimant requires a boot about the right ankle for support while walking or standing. She has a decreased ability to rise, stand and walk secondary to right ankle pain. Her ability to reach, hold, grip and manipulate is within normal limits. The severity of pain experienced is consistent with the objective findings.

Tr. 216.

The ALJ referred specifically to considering Listings 1.02 and 1.03 before presenting his conclusion that "[b]ecause the claimant retains the ability to ambulate effectively, the evidence establishes that the claimant's condition does not meet or medically equal a listed impairment." Tr. 22.

Evidence in the record that pertains to plaintiff's ambulation includes the scope of plaintiff's activities, such as walking to classes while pulling a roller carrier for her books,

9  - OPINION AND ORDER

shopping, washing dishes, spot mopping, walking for three blocks, cooking, doing laundry, and occasionally running a food booth at fairs. Tr. 169-71, 177, 258, 329.

There is insufficient evidence to support a conclusion that plaintiff was "unable to ambulate effectively." An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (citation omitted). After reviewing the record, including evidence of plaintiff's obesity, the ALJ explained that because plaintiff can ambulate effectively, her condition "does not meet or medically equal a listed impairment." Tr. 22.

Accordingly, the ALJ concluded correctly that plaintiff was limited to walking or standing for two hours, sitting for up to eight hours with the ability to occasionally change positions, occasionally kneeling, crouching, crawling, or climbing ramps and stairs, and never climbing ladders, ropes, or scaffolds. *Id*. The record supports these findings. Because an ALJ's decision must be upheld where the evidence presented would support either affirming or reversing that decision, plaintiff's objections here are overruled. *Benton*, 331 F.3d at 1035 (citation omitted); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (if the evidence presented reasonably supports either confirming or reversing the ALJ's decision, the ALJ's judgment stands).

**2.     The ALJ gave clear and convincing reasons for rejecting plaintiff's testimony**

Plaintiff next argues that the ALJ erred by failing to give clear and convincing reasons for rejecting plaintiff's testimony. In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness

and inconsistencies in claimant's testimony. *Burch*, 400 F.3d at 680 (quoting *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

If an ALJ finds that a claimant's testimony relating to limitations is unreliable, the ALJ must make a credibility determination citing the reasons why that testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). The ALJ must identify specifically what testimony is credible and what testimony undermines the claimant's complaints. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The Ninth Circuit set out a threshold test in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*) to assist the ALJ in deciding whether to accept a claimant's subjective symptom testimony. If the claimant produces evidence that meets the test, and there is no evidence of malingering, then the ALJ can reject the claimant's testimony about the severity of symptoms only by offering specific, clear, and convincing reasons for doing so. *See Dodrill*, 12 F.3d at 918.

Under this analysis, a claimant who alleges disability based on subjective symptoms must meet two tests. The first prong of the test requires that the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *see also Cotton*, 799 F.2d at 1407; *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996).

Second, the claimant must show that the impairment or combination of impairments could reasonably be expected to (not necessarily that it did) produce some degree of symptom:

11 - OPINION AND ORDER

> Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon. Finally, the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. This approach reflects the highly subjective and idiosyncratic nature of pain and other such symptoms. . . . Thus, the ALJ may not reject subjective symptom testimony under the *Cotton* analysis simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged (emphasis in original).

*Smolen*, 80 F.3d at 1282 (emphasis added) (citing *Bunnell*, 947 F.2d at 347-48).

In addition to medical evidence, factors relevant to the ALJ's credibility determination include: a plaintiff's daily activities; the location, duration, frequency, and intensity of his or her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Smolen*, 80 F.3d at 1284; *see also* 20 C.F.R. § 404.1529(c)(3).

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. In determining that subjective testimony is not credible, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Id*. (citations omitted).

12 - OPINION AND ORDER

If the plaintiff has met the burden of showing that his or her impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of the symptoms that plaintiff's testimony describes, and there is no evidence suggesting that the plaintiff is malingering, the ALJ may not reject testimony regarding the severity of plaintiff's symptoms unless there are clear and convincing reasons for doing so. *Id*. at 1283; *see also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

Moreover, unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting pain testimony must be clear and convincing. The ALJ is required to specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – general findings are insufficient. *Burch*, 400 F.3d at 680 (citations and internal quotation marks omitted). The ALJ is not permitted to disbelieve a plaintiff simply because no objective medical evidence supports the plaintiff's testimony regarding the severity of subjective symptoms from which the plaintiff suffers, particularly pain. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) (citations and internal quotations omitted). To find a plaintiff not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), or upon conflicts between the plaintiff's testimony and conduct, or upon internal contradictions in that testimony. *Id*. (citation and internal quotations omitted).

The ALJ must provide a "narrative discussion" containing specific reasons for the finding and supported by the evidence in the record, and is required to "make clear" the weight the adjudicator gave to the individual's statements and the reasons for that weight. *Id*. (citing SSR 96-7p and SSR 96-8p).

"While an ALJ may certainly find testimony not credible and disregard it as an unsupported, self-serving statement," a court cannot affirm such a determination "unless it is supported by specific findings and reasoning." *Robbins*, 466 F.3d at 884-85 (internal quotation and citation omitted).

In this case, the ALJ cited several specific reasons for viewing plaintiff's credibility as diminished. He recited inconsistencies regarding plaintiff's representations about how long she could walk or sit. Tr. 22. The ALJ noted that plaintiff failed to disclose that she operated a food booth until asked specifically about it at the hearing. Tr. 23. The ALJ commented that plaintiff's income from the food booth triggered sales tax filings in California and Washington, and juxtaposed that fact with evidence that plaintiff resides in rent-free public housing based upon her reports of having zero income. Tr. 23. He also was critical of plaintiff's "nimble capacity for advantage with regard to her educational pursuits," because she collected the maximum rate payable to full-time students, but afterwards dropped a class. *Id*. The ALJ pointed out that plaintiff "even testified that they only check attendance the first week," construing this as evidence that plaintiff acted disingenuously regarding her school funding. *Id*.

The ALJ also relied upon medical evaluations that were inconsistent with plaintiff's limitation descriptions. Consultative examiner Dr. Neville opined that plaintiff was limited to occasional squatting and bending. Tr. 23. State agency assessments also identified limitations that were less severe than those claimed by plaintiff. Tr. 23-24. Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in a credibility analysis. *Burch*, 400 F.3d at 681.

14 - OPINION AND ORDER

Plaintiff contends that the ALJ erred in his reasoning because plaintiff was living in public housing at the time of the hearing in December 2005, and did not operate a food booth at that time. Plaintiff also offered an alternative explanation for why she prefers to accept a full-time class load initially, and then selects one of the classes to audit. Tr. 320-23.

While these explanations offer alternative views regarding some of plaintiff's conduct, they do not obviate the ALJ's clear and convincing reasons for rejecting plaintiff's testimony. Plaintiff's unresolved inconsistencies in her statements provided grounds for the ALJ's evaluation. *See Burch*, 400 F.3d at 680; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Because the ALJ's conclusions were a reasonable interpretation of the evidence, they are affirmed.

        3.        the Commissioner met the burdens presented at step five

Finally, plaintiff contends that the Commissioner failed to prove that plaintiff retains the ability to perform "other work" in the national economy. After determining that plaintiff could not perform her past relevant work, the ALJ properly addressed whether other work existed in significant numbers in the national economy that plaintiff could perform. The ALJ took testimony from a VE for this purpose. This was proper. *See Tackett*, 180 F.3d at 1099.

Plaintiff complains that the hypothetical question posed by the ALJ to the VE failed to include all of the limitations that were established by the record. Specifically, plaintiff contends that the hypothetical question to the VE omitted a limitation involving an inability to move while elevating an ankle. The ALJ found that plaintiff was treated for cellulitis in August 2004, and that Dr. Hejinian recommended that plaintiff elevate her right leg above heart-level for fifteen

15 - OPINION AND ORDER

minutes three times a day. Tr. 23, referencing Tr. 267. The ALJ interpreted this medical advice to apply when plaintiff was suffering from cellulitis. Tr. 23.

This court has reviewed the ALJ's analysis of the relevant medical evidence and of plaintiff's RFC and concludes that the RFC analysis is supported by substantial evidence. Similarly, the hypothetical questioning presented to the VE, and the ALJ's subsequent interpretation of the testimony elicited from the VE, was proper. *See Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (an ALJ is not bound to accept as true any restrictions presented in a hypothetical question propounded by a claimant's counsel, but may choose to accept these restrictions if they are supported by substantial evidence).

The RFC finding and the hypothetical questioning posed to the vocational expert appropriately included only limitations "based on medical assumptions supported by substantial evidence in the record that reflect[ed] all the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) (citation omitted). In response to this proper questioning, the VE identified jobs that plaintiff could perform that exist in significant numbers in the national economy, includingsmall products assembler (unskilled, light work), document preparer (sedentary exertion), marker (light exertion) and surveillance system monitor (unskilled, sedentary work). Tr. 24-25, Finding 10.

Plaintiff also renews her complaint that the question of whether the combination of plaintiff's ankle condition and obesity meet or equal a listed impairment must be resolved. This has been resolved.

The hypothetical questioning submitted to the VE was consistent with, and supported by, the objective medical evidence presented. Because the ALJ's hypothetical questioning was

based upon substantial evidence in the record, this court concludes that the ALJ's reliance upon the VE's testimony in finding that plaintiff could perform other work was proper. *See Copeland v. Bowen*, 861 F.2d 536, 540-541 (9th Cir. 1988).

## **CONCLUSION**

Based on the foregoing, the findings of the Commissioner are based upon the correct legal standards and are supported by substantial evidence in the record. The final decision of the Commissioner denying plaintiff Juanita Hedrick's applications for DIB and SSI benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this   16    day of August, 2007.

                                      /s/ ANCER L. HAGGERTY  
                                         ANCER L. HAGGERTY  
                                   United States District Judge